UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| PEAPACK-GLADSTONE BANK,<br><br>*Plaintiff*,<br><br>v.<br><br>ANVIL MECHANICAL INC., DANIEL LEITO, ANTHONY RUFFINO, SAMSON HORUS L.L.C. d/b/a SAMSON FUNDING and LIBERTAS FUNDING, LLC,<br><br>*Defendants*. | Civil Action No.21-cv--10834<br><br>**COMPLAINT** |

Plaintiff, Peapack-Gladstone Bank, by and through its attorneys, McCarter & English, LLP, by way of Complaint against Defendants, states:

**PARTIES**

1. Plaintiff, Peapack-Gladstone Bank is a New Jersey bank with its principal place of business at 500 Hills Drive, Suite 300, Bedminster, New Jersey 07921 ("Peapack").

2. Defendant Anvil Mechanical Inc. is a New York entity with its principal place of business at 535 S. Columbus Avenue, Mt. Vernon, New York 10550.

3. Defendant Samson Horus L.L.C. d/b/a Samson Funding is a New York entity with its principal place of business at 97-77 Queens Blvd., Rego Park, New York, 11373 and, upon information and belief, its sole principal member is a citizen of New York.

4. Defendant Libertas Funding, LLC is a Connecticut entity with its principal place of business at 382 Greenwich Avenue Greenwich, Connecticut, 06830 and its sole principal member is a citizen of Connecticut.

5. Daniel Leito is a citizen of Connecticut residing in Bridgeport, Connecticut 06605.

6. Defendant Anthony Ruffino is a citizen of New York residing in Bronxville, New York 10708.

## JURISDICTION

7. Pursuant to 28 U.S.C. §1332, this Court has diversity jurisdiction over the claims asserted in this Complaint because the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity as Plaintiff is not a citizen of the same state as any Defendant.

## FIRST COUNT
(Action on Note as to Borrower)

8. Peapack and Anvil Mechanical Inc. ("Borrower") entered into a Loan Agreement effective November 4, 2019, whereby Peapack provided a $5,000,000 revolving line of credit to Borrower under certain terms (the "Loan Agreement"). A true and correct copy of the Loan Agreement is attached as Exhibit A.

9. Peapack advanced the full $5,000,000 in available credit line funding to Borrower (the "Loan").

10. The repayment of the Loan is evidenced, in part, by a Note with the effective date of November 4, 2019, in the original principal amount of $5,000,000 (the "Note"). A true and correct copy of the Note is attached as Exhibit B.

11. To secure repayment of the Loan, Borrower executed a commercial security agreement effective November 4, 2019 (the "Security Agreement" and together with the Loan

Agreement, the Note and all documents executed in connection with the foregoing, the "Loan Documents"). Pursuant to the Security Agreement, Borrower granted Peapack a security interest in all of Borrower's tangible and intangible assets, including its accounts receivable (the "Collateral"). A true and correct copy of the Security Agreement is attached as Exhibit C.

12. Peapack perfected its security interest in the Collateral by filing a UCC-1 with the State of New York recorded on November 4, 2019 as Filing No. 202005285717309 (the "Peapack UCC"). A true and correct copy of the Peapack UCC is attached as Exhibit D.

13. An Event of Default under the Loan Documents exists if Borrower fails to pay any payment when due, including monthly required payments or fails to perform any other obligation under the Loan Documents.

14. Borrower defaulted under the Loan Documents by, inter alia, failing to make payments when due beginning no later than May 17, 2020 and by failing to pay all sums due by the March 31, 2021 Maturity Date (the "Defaults").

15. Prior to the March 31, 2021 Maturity Date, Borrower and Peapack entered into a forbearance agreement dated September 17, 2020 (the "Forbearance Agreement").

16. The Borrower defaulted under the Forbearance Agreement by failing to make payments when due thereunder (the "Forbearance Default).

17. By letter dated November 9, 2021, Peapack gave notice that as a result of the Defaults and Forbearance Default, all outstanding amounts under the Loan were immediately due and payable.

18. As a result of the Defaults, all sums outstanding under the Note are fully and immediately due and payable.

19. Borrower has failed to pay all sums due under the Note.

**WHEREFORE**, Plaintiff Peapack-Gladstone Bank demands that judgment be entered in its favor and against Defendant Anvil Mechanical LLC, awarding all amounts due under the Note, together with costs of suit, including recovery of reasonable attorneys' fees.

## SECOND COUNT
(Breach of Contract as to Borrower)

20. Peapack repeats and realleges the allegations of the foregoing paragraphs of the Complaint as if fully set forth herein.

21. The Loan Agreement and Note constitute valid contracts between the parties pursuant to which, inter alia, money was lent to Borrower in exchange for its compliance with, and repayment of the amount due under the Loan, in accordance with the terms of the Note and the Loan Agreement.

22. The Loan was made to Borrower in accordance with the terms of the Loan Documents.

23. Borrower is in default under the terms of the Loan Documents by virtue of, inter alia, the Defaults, which collectively constitute a breach of contract.

24. As a result of this breaches, Peapack has been damaged.

**WHEREFORE**, Plaintiff Peapack-Gladstone Bank demands that judgment be entered in its favor and against Defendant Anvil Mechanical LLC, awarding compensatory damages, including all amounts due under the Loan Documents, together with prejudgment interest and costs of suit, including recovery of reasonable attorneys' fees.

## THIRD COUNT
(Action on Guaranties as to Guarantors)

25. Peapack repeats and realleges the allegations of the foregoing paragraphs of the Complaint as if fully set forth herein.

ME1 38588406v.1

26. Defendants Daniel Leito and Anthony Rifino ("Guarantors") each executed a Guaranty effective November 4, 2019 (the "Guaranties"). True and correct copies of the Guaranties are attached as Exhibit E.

27. Pursuant to the terms of the Guaranties, Guarantors irrevocably and unconditionally guaranteed payment when due of any and all liabilities of Borrower under the Loan Documents, together with all interest and attorneys' fees, costs and expenses incurred in enforcing any such liabilities.

28. As a result of the Defaults, all sums outstanding under the Loan Documents are due and owing.

29. Pursuant to the terms of the Guaranties, Guarantors shall be in default for failing to pay the sums due under the Note and other Loan Documents.

30. Guarantors have failed to pay all sums outstanding under the Note and other Loan Documents.

31. Guarantors are responsible for immediate repayment of all sums outstanding under the Note and other Loan Documents.

**WHEREFORE,** Plaintiff Peapack-Gladstone Bank demands that judgment be entered in its favor and against Defendants Daniel Leito and Anthony Ruffino, jointly and severally, awarding all amounts due under the Note, the Guaranties and other Loan Documents, together with costs of suit, including recovery of reasonable attorneys' fees.

## FOURTH COUNT
(Breach of Contract as to as to Guarantors)

32. Peapack repeats and realleges the allegations of the foregoing paragraphs of the Complaint as if fully set forth herein.

33. The Guaranties constitute valid contracts between Guarantors and Peapack pursuant to which, inter alia, money was lent to Borrower in exchange for Guarantors' guaranty of repayment of the amount due under the Note in accordance with the terms of the Note and the Loan Documents.

34. The Loan was made to Borrower in accordance with the terms of the Loan Documents.

35. Guarantors are in default under the terms of the Guaranties by virtue of, inter alia, the Defaults, which Defaults constitute breaches under the Guaranties.

36. As a result of these breaches, Peapack has been damaged.

**WHEREFORE,** Plaintiff Peapack-Gladstone Bank demands that judgment be entered in its favor and against Defendants Daniel Leito and Anthony Ruffino, jointly and severally, awarding compensatory damages, including all amounts due under the Note, Guaranty and other Loan Documents, together with prejudgment interest and costs of suit, including recovery of reasonable attorneys' fees.

## FIFTH COUNT
(Foreclosure of Security Interest as to Borrower)

37. Peapack repeats and realleges the allegations contained in the foregoing paragraphs of the Complaint as if set forth more fully herein.

38. Pursuant to the terms of the Security Agreement and the Loan Agreement, Borrower granted Peapack a secured interest in the Collateral.

39. Peapack perfected its security interest by filing the Peapack UCC on November 4, 2019.

40. The Security Agreement provides that upon default under the Loan Documents, Peapack may, among other things, take possession of the Collateral.

41. As a result of the Default, Peapack is entitled to foreclose on the Collateral and take possession.

42. Any lien on the Collateral is subject and subordinate to Peapack's lien.

**WHEREFORE,** Plaintiff Peapack-Gladstone Bank demands that judgment be entered:

a. Barring and foreclosing Borrower of all of its equity of redemption in and to the Collateral pledged by it, as more specifically described in the Security Agreement;

b. Adjudging that the said Collateral may be sold at public or private auction in a commercially reasonable manner by the sheriff to satisfy the amount due Peapack;

c. Directing Borrower and any person acting in concert with it to take no action to interfere with Peapack's collection of the Collateral;

d. Restraining Borrower or any person acting in concert with it from transporting, destroying, secreting, selling, encumbering, disposing of or removing the Collateral; and

e. Granting such other and further relief as the court deems equitable and just, including awarding Peapack costs associated with enforcing its rights under the Security Agreement and Loan Documents with respect to the Collateral, including reasonable attorneys' fees.

## SIXTH COUNT
(Conversion as to Samson Funding)

43. Peapack repeats and realleges the allegations contained in the foregoing paragraphs of the Complaint as if set forth more fully herein.

44. Upon information and belief, on September 11, 2019, Anvil and Samson Horus L.L.C. d/b/a Samson Funding ("Samson") allegedly entered into an agreement (the "Samson

Agreement") whereby Samson purportedly provided funding to Anvil in exchange for Samson purchasing Anvil's future receivables.

45. Upon information and belief, Samson advanced to Anvil $500,000 minus certain fees, in exchange for $645,000 in future receivables.

46. Instead of identifying receivables purportedly purchased, the Samson Agreement listed a repayment structure, which consisted of automatic ACH payments to Samson from Anvil.

47. The Samson Agreement, to the extent it is valid, is not a true sale of receivables and is instead a hard money loan disguised as a sale of receivables.

48. Samson did not file a UCC-1 Financing Statement to perfect its alleged purchase of Anvil's receivables until May 28, 2020 (the "Samson UCC").

49. Peapack perfected its security interest in the Collateral by filing the Peapack UCC on November 4, 2019, which includes a lien on accounts receivable and all other intangibles and tangible assets of Anvil, on November 4, 2019 and has a first priority lien on the Collateral.

50. As a result of the Defaults, which occurred no later than May 17, 2020, Peapack was entitled to immediate possession of Anvil's accounts receivable.

51. Samson unlawfully interfered with Peapack's right to Anvil's accounts receivable and other accounts by debiting funds from Anvil's accounts.

52. Samson's interference with the Collateral and Peapack's entitlement thereto constituted unlawful conversion.

53. Samson wrongfully converted at least $209,690.

54. As a result of Samson's actions, Peapack has been damaged by at least $209,690, not including any additional funds that may have been converted by Sampson as well as costs and fees incurred by Peapack in connection with the unlawful conversion.

**WHEREFORE,** Plaintiff Peapack-Gladstone Bank demands that judgment be entered in its favor and against Defendant Samson Horus L.L.C. d/b/a Samson Funding awarding compensatory damages of at least $209,690 and punitive damages, together with prejudgment interest and costs of suit, including recovery of reasonable attorneys' fees.

### SEVENTH COUNT
(Interference with Collateral as to Samson)

55. Peapack repeats and realleges the allegations contained in the foregoing paragraphs of the Complaint as if set forth more fully herein.

56. Peapack has a first priority, perfected security interest in the Collateral, including Anvil's accounts receivable.

57. Samson interfered with Peapack's security interest by purporting to transact in a sale of Anvil's receivables while on notice of the Peapack UCC, and while actually engaging in high-interest financing and debiting funds from Peapack's Collateral to the detriment of Peapack.

58. A true sale of receivables requires filing of a UCC-1 financing statement to perfect said sale and Samson never filed a UCC until eight months after the Samson Agreement and shortly after Anvil defaulted under the Loan Documents.

59. From November 2019 through at least August 2020, Samson Funding diverted the Collateral to itself through ACH debits and interfered with Peapack's interest in the Collateral and Peapack's right to immediate possession of the Collateral.

60. As a result of Samson's interference, Peapack has been damaged.

**WHEREFORE,** Plaintiff Peapack-Gladstone Bank demands that judgment be entered in its favor and against Defendant Samson Horus L.L.C. d/b/a Samson Funding awarding compensatory damages of at least $209,000 and punitive damages, together with prejudgment interest and costs of suit, including recovery of reasonable attorneys' fees.

## EIGHTH COUNT
(Conversion as to Libertas)

61. Peapack repeats and realleges the allegations contained in the foregoing paragraphs of the Complaint as if set forth more fully herein.

62. Upon information and belief, Anvil and Libertas Funding, LLC ("Libertas") entered into an agreement dated as of November 4, 2019 (the "Libertas Agreement"), whereby Libertas allegedly provided funding to Anvil in exchange for Libertas purchasing Anvil's future receivables.

63. Upon information and belief, Libertas allegedly advanced Anvil $990,000 in exchange for $1,295,000 in future receivables.

64. Instead of identifying receivables purportedly purchased, the Libertas Agreement listed a repayment structure, which consisted of automatic ACH payments to Libertas from Anvil.

65. The Libertas Agreement, to the extent it is valid, is not a true sale of receivables and is instead a hard money loan disguised as a sale of receivables.

66. Libertas has never filed a UCC-1 financing statement and thus, even if the Libertas were a sale of receivables, Libertas never perfected its interest.

67. Peapack perfected its security interest in the Collateral on November 4, 2019, which includes accounts receivable and all other intangibles and tangible assets of Anvil and as such has a first priority lien by virtue of the Peapack UCC.

68. As a result of the Defaults, which occurred no later than May 17, 2020, Peapack was entitled to immediate possession of Anvil's accounts receivable.

69. Libertas unlawfully interfered with Peapack's right to Anvil's accounts receivable and other accounts by debiting funds from Anvil's account.

70. Libertas's interference with the Collateral and Peapack's entitlement thereto constituted unlawful conversion.

71. Libertas wrongfully converted at least $552,476.65.

72. As a result of Libertas's actions, Peapack has been damaged by at least $552,476.65, not including any additional funds converted by Libertas as well as costs and fees incurred by Peapack in connection with the unlawful conversion.

**WHEREFORE,** Plaintiff Peapack-Gladstone Bank demands that judgment be entered in its favor and against Defendant Libertas Funding, LLC awarding compensatory and punitive damages of at least $552,476,65, together with prejudgment interest and costs of suit, including recovery of reasonable attorneys' fees.

## NINTH COUNT
(Interference with Collateral as to Libertas)

73. Peapack repeats and realleges the allegations contained in the foregoing paragraphs of the Complaint as if set forth more fully herein.

74. Peapack has a first priority, perfected security interest in the Collateral, including Anvil's accounts receivable.

75. Libertas interfered with Peapack's security interest by purporting to transact in a sale of receivables while on notice of Peapack's security interest in the Collateral and while actually engaging in high-interest financing and debiting funds from Peapack's Collateral to the detriment of Peapack.

76. A true sale of receivables requires filing of a UCC-1 financing statement to perfect said sale, which Libertas never filed.

ME1 38588406v.1

77. From November 2019 through at least August 2020, Libertas diverted the Collateral to itself through ACH debits and interfered with the Peapack's interest in the Collateral and Peapack's right to immediate possession.

78. As a result of this interference by Libertas, Peapack has been damaged.

**WHEREFORE,** Plaintiff Peapack-Gladstone Bank demands that judgment be entered in its favor and against Defendant Libertas Funding, LLC awarding compensatory and punitive damages of at least $552,476.65, together with prejudgment interest and costs of suit, including recovery of reasonable attorneys' fees.

        McCARTER & ENGLISH, LLP
        Attorneys for Plaintiff
        Peapack-Gladstone Bank


        By: */s/ Sheila E. Calello*
            SHEILA E. CALELLO
            A Member of the Firm


Dated: December 17, 2021