UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEAPACK-GLADSTONE BANK, : <br> : <br> *Plaintiff*, : <br> : <br> v. : <br> : <br> ANVIL MECHANICAL INC., DANIEL : <br> LEITO, ANTHONY RUFFINO, SAMSON : <br> HORUS L.L.C. d/b/a SAMSON FUNDING : <br> and LIBERTAS FUNDING, LLC, : <br> : <br> *Defendants*. : | Civil Action No. 21-cv-10834 |

**BRIEF IN SUPPORT OF PLAINTIFF'S ORDER TO SHOW CAUSE FOR ENTRY OF DEFAULT JUDGMENT AGAINST SAMSON HORUS L.L.C d/b/a SAMSON FUNDING**

**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
Newark, NJ 07102
*Attorneys for Plaintiff,*
*Peapack-Gladstone Bank*

Of Counsel and on the Brief:
Sheila E. Calello

ME1 39684881v.1

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................................1
FACTS ...........................................................................................................................................1
   The Loan ....................................................................................................................................1
   Samson's Conversion of and Interference with Plaintiff's Collateral .........................................2
PROCEDURAL HISTORY............................................................................................................4
STANDARD...................................................................................................................................4
LEGAL ARGUMENT ...................................................................................................................5
   I.    SAMSON WILLFULLY DEFAULTED ...................................................................5
   II.   SAMSON HAS NO MERITORIOUS DEFENSES ......................................................6
   III.  PLAINTIFF WILL BE SEVERELY PREJUDICED ABSENT ENTRY OF THE DEFAULT JUDGMENT............................................................................................10
   IV.  AN INQUEST INTO DAMAGES IS UNNECESSARY AS PLAINTIFF HAS SUBMITTED SUFFICIENT EVIDENCE ................................................................11
CONCLUSION............................................................................................................................11

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Action S.A. v. Marc Rich & Co., Inc.*,
    951 F.2d 504 (2d Cir. 1991) ................................................................................................... 13

*Ahles v. Aztec Enters.*,
    120 A.D.2d 903 (3rd Dep't 1986) ............................................................................................ 9

*Antoine v. Brooklyn Maids 26, Inc.*,
    489 F. Supp. 3d 68 (E.D.N.Y. 2020) ............................................................................. 3, 8, 12

*Bank of India v. Weg & Myers, P.C.*,
    257 A.D.2d 183 (1st Dep't 1999) ........................................................................................ 8, 10

*Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*,
    No. 06-CV-14226, 2008 U.S. Dist. LEXIS 107062, 2008 WL 5560868
    (S.D.N.Y. Oct. 27, 2008) .................................................................................................. 12, 13

*Brown v. Garey*,
    267 N.Y. 167 (1935) ................................................................................................................ 9

*Deep Foods Inc. v. Deep Foods Inc.*,
    419 F. Supp. 3d 569 (W.D.N.Y. 2019) .................................................................................... 7

*Employers' Fire Ins. Co. v Cotten*,
    245 NY 102 (1927) .................................................................................................................. 9

*General Elec. Co. v American Export Isbrandtsen Lines*,
    37 AD.2d. 959, 959 (2nd Dep't 1971) ..................................................................................... 9

*Hong Kong & Shanghai Banking Corp. v. HFH USA Corp.*,
    805 F. Supp. 133 (W.D.N.Y. 1992) ......................................................................................... 9

*Indymac Bank v. Nat'l Settlement Agency, Inc.*,
    No. 07-CV-6865, 2007 U.S. Dist. LEXIS 93420, 2007 WL 4468652
    (S.D.N.Y. Dec. 20, 2007) ..................................................................................................... 7, 8

*International Minerals & Resources Inc. v. Pappas*,
    761 F. Supp. 1068 (S.D.N.Y. 1991) ...................................................................................... 11

*Joseph v. HDMJ Rest., Inc.*,
    970 F. Supp. 2d 131 (E.D.N.Y. 2013) .................................................................................. 7, 8

*Lake Ontario Prod. Credit Ass'n v. Partnership of Grove*,
    138 A.D.2d 930, appeal denied, 72 N.Y.2d 806 (1988) ...................................................9

*Pierpoint v Hoyt*,
    260 NY 26 (1932) ...........................................................................................................9

*Priestley v. Headminder, Inc.*,
    647 F.3d 497 (2d Cir. 2011)...........................................................................................6

*Riddell Sports v. Brooks*,
    872 F. Supp. 73 (S.D.N.Y. 1995) .................................................................................11

*S.E.C. v. McNulty*,
    137 F.3d 732 (2d Cir. 1998)...........................................................................................7

*Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.*,
    1991 U.S. Dist. LEXIS 3614 Civ. 5399, 1991 WL 49782 (S.D.N.Y. Mar. 25,
    1991) ..........................................................................................................................6, 9

*State of New York v Seventh Regiment Fund*,
    98 NY2d 249(2002) .......................................................................................................9

*United States v. DiPaolo*,
    466 F. Supp. 2d 476 (S.D.N.Y. 2006)............................................................................7

**Statutes**

N.Y. Business Corporation Law § 306 ...................................................................................8

N.Y. U.C.C. 9-306(2)...............................................................................................................9

New York Civil Practice Law..................................................................................................8

UCC § 9-102 (2) .....................................................................................................................11

UCC § 9-203 ...........................................................................................................................12

UCC § 9-301 ...........................................................................................................................10

UCC § 9-317 ...........................................................................................................................10

UCC § 9-607 .............................................................................................................................3

UCC § 9-609 .............................................................................................................................2

## **PRELIMINARY STATEMENT**

Plaintiff, Peapack-Gladstone Bank ("Plaintiff") brings this Order to Show Cause for Entry of Default Judgment against Defendant Samson Horus L.L.C. d/b/a Samson Funding ("Samson"). Plaintiff made a $5,000,000 loan to Defendant Anvil Mechanical Inc. ("Anvil"), the repayment of which is secured by a lien on all tangible and intangible assets of Anvil (the "Collateral"). Plaintiff's interest in the Collateral constitutes a perfected first-priority lien. With knowledge of Plaintiff's first-priority lien, Samson purportedly "purchased" $645,000 of Anvil's accounts receivable on which Samson collected at least $209,690. In doing so, Samson unlawfully converted and interfered with Plaintiff's Collateral.

Because Samson has defaulted, all allegations in the Complaint are deemed admitted. Plaintiff, as demonstrated below, has met its burden of showing its stated causes of action against Samson and is therefore entitled to judgment as a matter of law. Moreover, Plaintiff has submitted evidence to further support entry of judgment and awarding of damages.

## **FACTS**

### **The Loan**

Plaintiff and Anvil entered into a Loan Agreement effective November 4, 2019, whereby Plaintiff provided a $5,000,000 revolving line of credit to Anvil (the "Loan Agreement"). Affidavit of Kenneth Geiger (the "Gieger Aff.") at ¶ 3, Ex. A. To secure repayment of the Loan, Anvil executed a commercial security agreement effective November 4, 2019 (the "Security Agreement"). *Id.* at ¶ 6. Pursuant to the Security Agreement, Anvil granted Plaintiff a security interest in all of the Collateral, consisting of Anvil's tangible and intangible assets, including its accounts, deposit account and chattel paper. *Id.* at ¶ 7, Ex. C.

1

Pursuant to the Security Agreement, all of Anvil's cash income and cash distributions ("Cash Distributions") are subject to Plaintiff's perfected lien and are held in trust for Plaintiff unless and until either demand is made by Plaintiff or there is a default under the Loan Agreement, at which time the Cash Distributions are immediately due and owing to Plaintiff. *Id.* at ¶ 9, Ex. C. at Section 6.4. Plaintiff perfected its security interest in the Collateral by filing a UCC-1 with the State of New York, recorded on November 4, 2019 as Filing No. 202005285717309 ("Plaintiff's UCC"). *Id.* at ¶ 8, Ex. D. There were no permitted liens on the Collateral and the Loan Documents prohibited any liens on the Collateral. *Id.* at ¶10.

An Event of Default under the Loan Documents exists if Anvil fails to pay any payment when due. *Id.* at ¶ 11, Ex. A (Loan Agreement) at Section 7.2. Upon default, Plaintiff may exercise all rights and remedies of a secured party under the UCC, at law, in equity and under any of the documents executed in connection with the Loan (collectively, the "Loan Documents"). *Id.* Such remedies include (i) taking immediate possession of the Collateral, Ex. C at Section 7.2.2 and UCC § 9-609; and (ii) collecting on or taking control of all Collateral accounts of Anvil. *Id.* at ¶ 12. Ex. C at Section 7.2.4 and UCC § 9-607. Anvil defaulted under the Loan Documents by, *inter alia*, failing to make payments when due beginning no later than May 17, 2020 (the "Defaults"). *Id.* at ¶ 12. To date, the outstanding amount due and owing to Plaintiff by Anvil is $5,000,000.00 in principal, contract and default interest, applicable fees, incurred costs, and attorneys' fees. *Id.* at ¶ 14.

### Samson's Conversion of and Interference with Plaintiff's Collateral

According to a Verified Complaint filed by Samson against Anvil, on September 11, 2019, Anvil and Samson allegedly entered into an agreement (the "Samson Agreement") whereby Samson purportedly provided funding to Anvil in exchange for Samson's purchase of Anvil's

2

future receivables.  Compl. at ¶ 44[1]; *see also* Calello Aff., Ex. B (the "Samson Complaint"). Samson advanced to Anvil $500,000 minus certain fees, in exchange for $645,000 in future receivables.  Compl. at ¶ 45; *see also* Calello Aff., Ex. B.  Instead of identifying receivables purportedly purchased, the Samson Agreement listed a repayment structure, which consisted of automatic ACH payments to Samson from a designated account of Anvil.  Compl. at ¶ 46; *see also* Calello Aff., Ex. B.

The Samson Agreement, to the extent it is valid, is not a true sale of receivables and is instead a hard money loan disguised as a sale of receivables.  Compl. at ¶ 47.  A true sale of receivables requires filing of a UCC-1 financing statement to perfect said sale and Samson never filed a UCC until eight months after the Samson Agreement and after Anvil defaulted under the Loan Documents.  Compl. at ¶ 58.  Indeed, Samson did not file a UCC-1 Financing Statement to perfect its alleged purchase of Anvil's receivables until May 28, 2020 (the "Samson UCC"), six months after Plaintiff's Loan and recording of its UCC.  Compl. at ¶ 48.

As a result of the Defaults, which predated Samson's UCC, Plaintiff was entitled to immediate possession of Anvil's accounts receivable.  Compl. at ¶ 50.  Samson unlawfully interfered with Plaintiff's right to Anvil's accounts receivable and other accounts by debiting funds from Anvil's accounts.  Compl. at ¶ 51.  Samson interfered with Plaintiff's security interest by purporting to purchase Anvil's receivables and while actually engaging in high-interest financing and debiting funds from Plaintiff's Collateral to the detriment of Plaintiff.  Compl. at ¶ 57. Samson's interference with the Collateral and Plaintiff's entitlement thereto constitutes unlawful conversion.  Compl. at ¶ 52.  According to the Samson Complaint, Samson wrongfully converted

---

[1] All allegations in the Complaint against Samson are deemed admitted by virtue of their default.  See Affidavit of Sheila E. Calello ("Calello Aff.") at ¶ 7; *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 90 (E.D.N.Y. 2020) ("Allegations of liability are deemed admitted upon default").  Additionally, Plaintiff sets forth further indisputable evidence from the Samson action filed against Anvil.

3

at least $209,690. Compl. at ¶ 53; *see also* Calello Aff., Ex. B . As a result of Samson's actions, Plaintiff has been damaged by at least $209,690. Compl. at ¶ 54; *see also* Calello Aff., Ex. B.

## PROCEDURAL HISTORY

Plaintiff commenced this diversity action on December 17, 2021, by filing a Complaint against Defendants (the "Complaint"). Calello Aff. at ¶ 2. On January 7, 2022, Samson was served pursuant to Fed. R. Civ. P. 4(h)(1)(B) with a copy of the Complaint. Calello Aff. at, Ex. A. Pursuant to Fed. R. Civ. P. 12(a)(1)(A)(i), Samson was required to file an answer or responsive pleading by January 28, 2022. Samson failed to plead, answer or otherwise defend against the Complaint as required. Calello Aff. at ¶ 7.

On February 9, 2022, the Clerk of the Court for the United States District Court for the Southern District of New York issued a Certificate of Default Pursuant to Local Civil Rule 55.1 against Defendant Samson Horus L.L.C. d/b/a Samson Funding. Calello Aff. at ¶ 4.

## STANDARD

Federal Rule of Civil Procedure 55 establishes a two-step process in the event of a defendant's default. First, the Clerk of the Court must enter the default if defendant fails to "plead or otherwise defend" in response to a properly served and filed complaint. Fed. R. Civ. P. 55(a); *Priestley v. Headminder, Inc.*, 647 F.3d 497, 504 (2d Cir. 2011). Second, a default judgment may then be entered if the complaint sets forth a valid claim and the plaintiff has established her entitlement to a specific amount of damages. Fed. R. Civ. P. 55(b). When determining whether to grant a default judgment, the court considers three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Joseph v. HDMJ Rest., Inc.*, 970 F. Supp. 2d 131, 141 (E.D.N.Y.

4

2013) (quoting *Mason Tenders Dist. Council v. Duce Constr. Corp.*, No. 02-CV-9044, 2003 U.S. Dist. LEXIS 6881, 2003 WL 1960584, at *2 (S.D.N.Y. Apr. 25, 2003)).

## LEGAL ARGUMENT

In addition to the Clerk's certificate of default already obtained, Plaintiff must show three factors are met for entry of default judgment against Samson: (1) willfulness; (2) whether there are any meritorious defenses; and (3) prejudice Plaintiff would suffer if entry of default judgment is denied.

### I. SAMSON WILLFULLY DEFAULTED

The Second Circuit has held that failing to respond to a complaint in itself evidences willful default. *See S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1998) (willful default when failure to respond); *Indymac Bank v. Nat'l Settlement Agency, Inc.*, No. 07-CV-6865, 2007 U.S. Dist. LEXIS 93420, 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007) (finding defendants' failure to appear, failure to respond to the complaint, and failure to respond to a motion for default judgment indicated willful conduct); *United States v. DiPaolo*, 466 F. Supp. 2d 476, 482 (S.D.N.Y. 2006) (grounds for default judgment were established by defendant's failure to answer the complaint, particularly in light of the fact that the defendant had expressed no intention to do so at a later time); *Deep Foods Inc. v. Deep Foods Inc.*, 419 F. Supp. 3d 569, 577 (W.D.N.Y. 2019) (willfulness found when defendants failed to answer complaint and motion for default judgment).

Samson was properly served with the Complaint via service on the Secretary of State of New York. A defendant may be served in the manner provided for by Rule 4 of the Federal Rules of Civil Procedure. Under Rule 4(e)(1), an individual may be served in a judicial district of the United States by "following state law for serving a summons in an action brought in courts of

general jurisdiction in the state where the district court is located or where service is made[.]" Fed. R. Civ. P. 4(e)(1).

Service here was proper under the requirements of the New York Civil Practice Law and Rules ("CPLR"). Samson was served on January 7, 2022, pursuant to N.Y. Business Corporation Law § 306, with copies of the Complaint and Summons served on Colleen Banahan, authorized agent in the Office of the Secretary of State of New York, who was authorized and did in fact accept service on behalf of Samson. Calello Aff. at ¶ 7; Ex. A. Despite proper service, Samson failed to answer or otherwise respond to the Complaint, thus demonstrating a willful default.

## II. SAMSON HAS NO MERITORIOUS DEFENSES

"Where a defendant fails to answer the complaint, courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment." *Joseph*, 970 F. Supp. 2d at 143 (*citing Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46, 2012 U.S. Dist. LEXIS 5275, 2012 WL 194075, at *3 (E.D.N.Y Jan. 17, 2012) and *Mack Fin. Serv. v. Poczatek*, No. 10-CV-3799, 2011 U.S. Dist. LEXIS 117948, 2011 WL 4628695, at *4 (E.D.N.Y. Aug. 30, 2011)). Moreover, when a defendant has not presented a defense to the court, the well-pleaded allegations in plaintiff's complaint are presumed to be true. *Indymac Bank*, 2007 U.S. Dist. LEXIS 93420, 2007 WL 4468652, at *1; *Myers*, 236 F. Supp. 3d at 707-08.

Samson has asserted no defenses to Plaintiff's well-pleaded factual allegations. "Notwithstanding, a plaintiff still must demonstrate that the factual allegations set forth in her complaint state valid claims to relief." *See Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d at 90 (citing *Myers*, 236 F. Supp. 3d at 708). Here, the allegations in the Complaint are based directly on the verified Samson Complaint, thus the claims against Samson are valid causes of action to which there can be no meritorious defense.

**Conversion**

Plaintiff has asserted a claim of conversion against Samson.  A conversion takes place when someone, intentionally and without authority, assumes or exercises control over property belonging to another, interfering with that person's right of possession.  *State of New York v Seventh Regiment Fund*, 98 NY2d 249 (2002).  Two key elements of conversion are (1) plaintiff's possessory right or interest in the property; and (2) defendant's dominion over the property or interference with it, in derogation of plaintiff's rights.  *Pierpoint v Hoyt*, 260 N.Y. 26 (1932); *Employers' Fire Ins. Co. v Cotten*, 245 NY 102 (1927); *see also Restatement (Second) of Torts* §§ 8A, 223, 243; Prosser and Keeton, *Torts* § 15, at 92, 102 (5th ed).  Intentionally does not mean a wrongful intent.  *Brown v. Garey*, 267 N.Y. 167 (1935).  Rather, it means an action taken with lack of mistake.  *Id.* at 170.  "Intent to possess another's property is not an essential element of conversion." *Ahles v. Aztec Enters.*, 120 A.D.2d 903, 903-904 (N.Y. 3rd Dep't 1986).  Moreover, "it is not even necessary that a converter take physical possession of the property." *Id.*  "Any wrongful exercise of dominion by one other than the owner is a conversion." *General Elec. Co. v American Export Isbrandtsen Lines*, 37 AD.2d. 959, 959 (N.Y. 2nd Dep't 1971).

A third-party will be liable to a secured creditor for conversion where the third-party has made an unauthorized disposition of the collateral.  Here, that disposition is Samson taking the funds in Anvil's accounts when such funds are Collateral belonging to Plaintiff.  Where "a security interest continues in collateral notwithstanding sale," N.Y. U.C.C. 9-306(2), "the secured creditor may maintain an action for conversion against the transferee." *Lake Ontario Prod. Credit Ass'n v. Partnership of Grove*, 138 A.D.2d 930 (N.Y. 4th Dep't), *appeal denied*, 72 N.Y.2d 806 (1988); *see e.g., Hong Kong & Shanghai Banking Corp. v. HFH USA Corp.*, 805 F. Supp. 133, 145 (W.D.N.Y. 1992); *Standard Dyeing & Finishing Co. v. Arma Textile Printers Corp.*, 1991 U.S. Dist. LEXIS 3614, 85 Civ. 5399, 1991 WL 49782 at *7 (S.D.N.Y. Mar. 25, 1991) ("an action

7

seeking damages for conversion is a proper remedy for the holder of a security interest … to bring against a third party … when the debtor … has made an unauthorized disposition of the collateral…. ); *Bank of India v. Weg & Myers, P.C.*, 257 A.D.2d 183, 191 (N.Y. 1st Dep't 1999) (defendant "converted the proceeds in its possession to its own benefit and that of its client by knowingly exercising unauthorized dominion and control … over property in which the Bank, as a secured creditor, had a superior property interest.").

All the elements of conversion are met as against Samson. Plaintiff had an indisputable right to the Collateral, which includes all accounts. Geiger Aff. at ¶ 5. Pursuant to the Security Agreement, all of Anvil's Cash Distributions are subject to Plaintiff's UCC and are to be held in trust for Plaintiff unless and until either demand is made by Plaintiff or there is a default under the Loan Agreement, at which time the Cash Distributions are immediately due and owing to Plaintiff. *Id.* at ¶ 7.[2] Plaintiff perfected its security interest in the Collateral by filing Plaintiff's UCC on November 4, 2019. *Id.* at Ex. C. Samson never perfected its alleged security interest and has no claim to the Collateral because (1) true sale of receivables requires filing of a UCC-1 financing statement to perfect said sale, UCC § 9-301, and Samson never filed a UCC until May 2020, eight months after the Samson Agreement and shortly after Anvil's non-payment default under the Loan Documents, Compl. at ¶ 5, and (2) even if the filing of the UCC-1 on May 28, 2020 could be considered perfection, the lien is subordinate to Plaintiff's perfected security interest in the Collateral. *See* UCC § 9-317 (stating that first in time, perfected creditor has the superior priority).

Samson interfered with Plaintiff's right to possession of the Collateral (whether held in trust by Anvil or actual possession) by taking funds, keeping said funds, and depriving Plaintiff of same. Plaintiff never authorized such interference and it was an intentional act, as evidenced by

---

[2] At the that time, Anvil was already in default because of the unauthorized and undisclosed pledge of Collateral to Samson. *See* Gieger Aff. at ¶ 2, Ex. A, Sections 4.8 and 7.3.

the fact that Samson itself initiated the ACH debits from Anvil's account. *See* Samson Agreement at p.1 (authorizing Samson to debit Anvil's account).[3] In total, Samson received at least $209,690.00 from ACH payments—all of which was part of Plaintiff's Collateral. Compl. at ¶¶ 53, 71; see also Calello Aff., Ex. B. Accordingly, Default Judgment should be entered against Samson for conversion of the Collateral.

### Tortious Interference

Plaintiff has asserted a claim of tortious interference against Samson. Under New York law, a plaintiff may state a claim for tortious interference with contractual relations by alleging (1) the existence of a valid contract between itself and a third party for a specific term; (2) defendant's knowledge of that contract; (3) defendant's intentional procuring of its breach; and (4) damages. *Riddell Sports v. Brooks*, 872 F. Supp. 73, 77 (S.D.N.Y. 1995) (*citing Jews for Jesus, Inc. v. Jewish Community Relations Council*, Inc., 968 F.2d 286, 295 (2d Cir. 1992)); *International Minerals & Resources Inc. v. Pappas*, 761 F. Supp. 1068, 1075 (S.D.N.Y. 1991).

Here, Plaintiff has sufficiently pleaded all four elements. First, Plaintiff and Anvil entered into a valid Security Agreement. Compl. at ¶ 11; Ex. C to the Compl.; Geiger Aff. at ¶¶ 6-7, Ex. C. Second, Samson had record knowledge of that contract by virtue of Plaintiff's filed UCC. Compl. at ¶ 57, 75; Geiger Aff. ¶ 8, Ex. D . In Plaintiff's UCC, the description of the Collateral includes a reference, as "more particularly described in the security agreement executed and delivered to the Secured Party".[4] Thus, Samson had record notice of the existence of the Security

---

[3] The Court need not determine whether the account or accounts of Anvil that Samson debited payments from was an "account" or "deposit account" under the UCC. UCC § 9-102 (2),(29). The Samson Agreement clearly states that the payments debited via ACH by Samson are from receipts i.e. accounts receivable. *See* Samson Agreement at p.1. Such receipts and receivables are within the definition of "account" under the UCC, UCC § 9-102 (2), and within the scope of Plaintiff's UCC. Moreover, the allegations is the Complaint are deemed admitted, which includes the allegations that Samson ACH Debits were made from the Collateral. *See* Compl. at ¶¶ 59, 77.

[4] A UCC-1 can only be filed if there is a valid grant of security interest, which is most commonly created through a valid security agreement. *See* UCC § 9-203 (requiring that the "debtor has authenticated a security agreement that

9

Agreement. Third, Samson intentionally procured the breach of the Security Agreement by interfering with Plaintiff's right thereunder to immediate possession of the Collateral by its "purchase" of future receivables and initiating the ACH debits from Anvil's accounts. Compl. at ¶¶ 40, 50, 59, 68, and 77. Finally, Plaintiff has been damaged by the interference. Samson received at least $209,690.00 from ACH payments—all of which was part of Plaintiff's Collateral that should have been available to Plaintiff to pay the Loan. Compl. at ¶¶53, 71. The Loan is in default and over $5,000,0000 remains due and owing. *See* Geiger Aff. ¶ 14. Accordingly, Default Judgment should be entered against Samson for interference with Plaintiff's Collateral.

### III. PLAINTIFF WILL BE SEVERELY PREJUDICED ABSENT ENTRY OF THE DEFAULT JUDGMENT

The final factor the Court considers before entering default judgment is whether plaintiff would be prejudiced if its motion for default judgment were denied. Denying the motion would be prejudicial to Plaintiff "as there are not additional steps available to secure relief" from the Court. *Bridge Oil Ltd. v. Emerald Reefer Lines, LLC*, No. 06-CV-14226, 2008 U.S. Dist. LEXIS 107062, 2008 WL 5560868, at *2 (S.D.N.Y. Oct. 27, 2008) (citing *Mason Tenders*, 2003 U.S. Dist. LEXIS 6881, 2003 WL 1960584, at *3). "Without the entry of a default judgment, plaintiff would be unable to recover for the claims adequately set forth in the complaint." *Brooklyn Maids 26, Inc.*, 489 F. Supp. at 90.

Here, Plaintiff has no avenue of relief as to Defendant Sampson without entry of default judgment. Plaintiff is owed more than $5,000,000 from Anvil in principal alone. While Samson was depleting the cash Collateral, Plaintiff was not receiving payments to which it was entitled. Samson received funds from the Collateral to which it had no right because of Plaintiff's first

---

provides a description of the collateral"). Thus, Plaintiff's UCC is further record notice of the existence of the security agreement.

10

priority lien. Now, Samson has willfully defaulted and refused to answer the Complaint. Plaintiff's only option to pursue the claims against Samson is by obtaining a default judgment.

### IV. AN INQUEST INTO DAMAGES IS UNNECESSARY AS PLAINTIFF HAS SUBMITTED SUFFICIENT EVIDENCE

When determining damages upon entry of a default judgment, a court may make this determination based upon evidence presented at a hearing or upon a review of "detailed affidavits or documentary evidence." *Id.*; see also *Fed. R. Civ. P.* 55(b)(2); *Action S.A. v. Marc Rich & Co., Inc.*, 951 F.2d 504, 508 (2d Cir. 1991). As detailed herein and supported by evidence in the Affidavits of Kenneth Geiger and Sheila E. Calello, the damages here arise from Samson's unlawful conversion of the Collateral. The damages are not speculative because they are set forth in Samson Verified Complaint against Anvil, in which Samson admits the amounts taken from the Collateral. *See* Calello Aff. at Ex. B. Samson wrongfully converted at least $209,690. As a result of Samson's actions, Plaintiff has been damaged by at least $209,690. This amount was admitted and set forth by Samson itself. Therefore, an inquest into damages is unnecessary and Plaintiff asks the Court to enter judgment accordingly.

### CONCLUSION

For the foregoing reasons, Plaintiff asks the Court to grant its Motion for Default Judgment against Samson and enter judgment in Plaintiff's favor and against Samson in the amount of $209,690.

                                  Respectfully submitted,

Dated: May 10, 2022                   McCARTER & ENGLISH, LLP
*Attorneys for Plaintiff*

                               By: */s/ Sheila E. Calello*
                                   Sheila E. Calello
                                   A Member of the Firm
                                   Four Gateway Center
                                   100 Mulberry St.
                                   Newark, NJ 07102
                                   T: (973) 639-6931
                                   scalello@mccarter.com

ME1 39684881v.1